1
2
3
4
5
6
7       UNITED STATES DISTRICT COURT
8       WESTERN DISTRICT OF WASHINGTON
        AT SEATTLE
9
10   NEW FLYER INDUSTRIES CANADA ULC,        Case No. 2:18-CV-299-RSL
     and NEW FLYER OF AMERICA INC.,
11                                           ORDER GRANTING
                    Plaintiffs,              DEFENDANT'S MOTION
12                                           FOR SUMMARY
                    v.                       JUDGMENT
13
     RUGBY AVIATION, LLC d/b/a SAN JUAN
14   AIRLINES,
15
                    Defendant.
16
17          This matter comes before the Court on Rugby Aviation, LLC d/b/a/ San Juan Airlines'

     ("San Juan Airlines") motion for summary judgment. Dkt. #42.[1]
18
19                                    **BACKGROUND**

20          This case arises out of the apparently unintentional use of similar trademarks by two

21   companies, San Juan Airlines and New Flyer Industries Canada ULC, along with its subsidiary,

22   New Flyer of America Inc. (together, "New Flyer"). New Flyer brought claims for trademark

23   infringement, dilution, unfair competition, and unjust enrichment. Dkt. #1 (Compl.) at ¶¶ 52–96.

24   San Juan Airlines moves for summary judgment on all claims. Dkt. #42.

25
26
27          [1] This matter can be decided on the briefing filed by both parties. San Juan Airlines' request for
     oral argument is accordingly denied. See Dkt. #42.
28
     ORDER GRANTING DEFENDANT'S MOTION
     FOR SUMMARY JUDGMENT - 1

## A. The Parties

New Flyer is the largest bus manufacturer and parts distributor in North America, supplying buses to the 25 largest municipal transit agencies. Dkt. #56 (Norris Decl.) at ¶ 2. New Flyer estimates that it occupies approximately 43% in market share of United States and Canadian heavy-duty bus deliveries. Id. at ¶ 3. It sells approximately 2,000 to 2,500 buses every year. Ex. 1, Dkt. #46-1 (Norris Dep.) at 56:14–23. However, New Flyer does not own any buses, sell any bus tickets, or operate any bus lines itself. That is done by the customers who buy their buses. Id. at 48:22–25, 51:1–52:13. Its main competitors are bus manufacturers BYD and Proterra. Id. at 95:1–96:15.

In 2003, King County Metro in Seattle placed an order for 213 hybrid buses. Norris Decl. at ¶ 8. In 2014, King County Metro signed a $164 million contract with New Flyer for 141 new electric trolley buses to replace its existing fleet of 155 electric trolley buses. Id. at ¶ 9. New Flyer has a major presence in the King County region. However, it does not do any business in the San Juan Islands, and its customers do not include Whatcom Transportation Authority, the operator of Bellingham's bus system ("Whatcom"). Norris Dep. at 49:1–3; Ex. 5, Dkt. #46-2 (Moen Dep.) at 16:7–9. One of New Flyer's competitors, Gillig, sells buses to Whatcom. Norris Dep. at 185:14–186:5.

San Juan Airlines is a small company based in Bellingham that is owned by Jason and Charlene Douglass. Dkt. #44 (Douglass Decl.) at ¶ 2. The Douglasses purchased the company from Louis ('Skip') and Katie Jansen in April 2017. Id. at ¶ 8; see Ex. 2, Dkt. #44 at 8–25. They and their 20 employees[2] fly customers to the San Juan Islands and surrounding areas on five propeller planes that seat between three and five passengers. Douglass Decl. at ¶ 3. San Juan Airlines also offers charter flights throughout Puget Sound and to Vancouver Island. Id. at ¶ 4.

---

[2] New Flyer has approximately 300 times that number of employees. Hanno van der Bijl, *Transit bus company unveils $25M Alabama expansion*, BIRMINGHAM BUSINESS JOURNAL (Nov. 27, 2018), https://www.bizjournals.com/birmingham/news/2018/11/27/transit-bus-company-unveils-25m-alabama-expansion.html.

They market their flights to travelers in Bellingham, Anacortes, Friday Harbor, Eastsound, Roche Harbor, Seattle, Olympia, Tacoma, Gig Harbor, and Port Townsend. Id. at ¶ 5. Approximately 90% of its reservations are made by individuals or companies with addresses 30 miles from Bellingham Airport. Id. at ¶ 6. Approximately 25-30% of its revenue comes from flying residents of the San Juan Islands to and from their homes, and 35% of its business comes from health care and construction workers and professional service providers who travel to the San Juan Islands year-round. Id. Its tickets are sold over the telephone. Id. at ¶ 10.

### B. San Juan Airlines and New Flyer's Logos

New Flyer's logo is comprised of "two concentric circles centered between two 'wings' consisting of three feathers each", as below.[3] Compl. at ¶ 16.



The company registered the black and white logo on March 14, 2007 with the Patent and Trademark Office ("PTO"). Dkt. #46 (Goldman Decl.) at ¶ 5. Color was not claimed as a feature of the mark. Id. It was registered for use on buses. Id. On November 25, 2015 and June 5, 2017, New Flyer again registered its black and white logo for use on buses. Id. at ¶ 6. Two months later, New Flyer applied for protection of its mark with the colors orange and blue for use on buses. See Dkt. #1-4. The logo is usually accompanied by the housemark NEW FLYER or the mark BUILT TO RELY ON. Id. at ¶ 17. But it is also occasionally used without them. Norris Dep. at 79:15–82:6. Permission must be obtained from the marketing department before the logo is used without the company's name. Id. at 82:7–14.

---

[3] Ex. 1, Dkt. #46-1 at 77; see Norris Dep. at 91:14–22.

San Juan Airlines' logo is very similar, as below.[4]



In 2013, before the Douglasses purchased San Juan Airlines, the Jansens hired Greg DeVeer, a graphic designer, to design a new logo for the airline. Ex. 7, Dkt. #57-7 (DeVeer Dep.) at 66:4–67:21. They asked him to use the color orange for the logo because they had recently repainted their planes in that color. Id. at 81:12–25. DeVeer's main inspiration for the design was the wing pins he received as a child from airplane pilots. Id. at 94:6–22. He submitted two rounds of designs to the Jansens, incorporating their feedback after the initial meeting. Id. at 134:22–142:2. He was not aware of New Flyer's logo at the time. Id. at 173:23–174:14. Neither was Skip Jansen, see Dkt. #43 (Jansen Decl.) at ¶ 2, or Janet Englehart, the in-house accountant for San Juan Airlines prior to its purchase by the Douglasses. Dkt. #45 (Englehart Decl.) at ¶¶ 2–3. DeVeer testified that he would not have "felt it was appropriate to have San Juan [Airlines] use the logo" that he designed had he been aware of the New Flyer logo at the time, because it was "too similar." DeVeer Dep. at 45:19–46:1.

New Flyer brought claims for trademark infringement of its marks, U.S. Reg. No. 3358708, U.S. Reg. No. 5405486, and U.S. Reg. No. 5263347 (collectively, "New Flyer Marks"), under the Lanham Act, see 15 U.S.C. § 1114(1), and under the common law, for trademark dilution under the Lanham Act, see 15 U.S.C. § 1125(c), and Washington state law, see RCW 19.77.160, for false designation of origin and unfair competition under the Lanham Act, see 15 U.S.C. 1125(a), for unfair trade practice under Washington's Consumer Protection Act, see RCW 19.86.010 et seq., and for unjust enrichment. Compl. at ¶¶ 52–96.

---

[4] Ex. 4, Dkt. #46-2 at 59; see DeVeer Dep. at 141:6–142:2.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 4

## DISCUSSION

### A. Defendant's Request to Strike Plaintiff's Expert Report

In its response to San Juan Airlines' motion for summary judgment, New Flyer included an expert report from Philip G. Hampton II ("Hampton Report") that contained his "expert opinions and testimony regarding the practices and procedures of the United States [PTO] … in connection with the infringement of [the trademarks] owned by New Flyer and asserted in this case." Ex. 4, Dkt. #57-5. San Juan Airlines moved to strike the Hampton Report in its reply. Dkt. #62 at 16. New Flyer argued in a brief surreply that the motion to strike was procedurally improper. Dkt. #65 at 1–2.

San Juan Airlines' request to strike the Hampton Report was not, as New Flyer suggests, an "argument[] raised for the first time in a reply brief" that the Court need not consider. Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) (citing Koerner v. Grigas, 328 F.3d 1039, 1048 (9th Cir. 2003)). The airline could not have raised this argument previously in its motion for summary judgment because the Hampton Report was included only in New Flyer's response. Anchondo v. United States, No. C15-1070RSL, 2016 WL 2930439, at *2 (W.D. Wash. May 19, 2016) ("exceptions [in which the Court can consider an argument raised for the first time in a reply brief] include … if the argument was raised by an opposing party…"); Levias v. Pac. Mar. Ass'n, No. 08-CV-1610-JPD, 2010 WL 431884, at *3 (W.D. Wash. Jan. 27, 2010) (denying motion to strike because "there is no unfairness in allowing Defendants to respond in their reply brief to new arguments presented by Plaintiffs in their opposition.").

However, New Flyer has not had the opportunity to meaningfully respond. Dkt. #65 at 2; see LCR 7(g). The Court declines, therefore, to strike the Hampton Report outright, but notes that "an expert witness may not provide legal conclusions, or opinions on an 'ultimate issue of law.'" Medvedeva v. City of Kirkland, No. C14-7RSL, 2015 WL 11233199, at *2 (W.D. Wash. May 18, 2015) (citing Nationwide Transport Fin. & Cass Info. Sys., Inc., 523 F.3d 1051, 1058 (9th Cir. 2008)). The Court will read the Hampton Report accordingly.

For all the foregoing reasons, San Juan Airlines' request to strike the Hampton Report, see Dkt. #62 at 16, is DENIED.

## B. Legal Standard

A party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The proper question … is whether, viewing the facts in the non-moving party's favor, summary judgment for the moving party is appropriate." Zetwick v. Cty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citing Arizona ex rel. Horne v. Geo Grp., Inc., 816 F.3d 1189, 1207 (9th Cir. 2016)). "[W]here evidence is genuinely disputed on a particular issue—such as by conflicting testimony—that 'issue is inappropriate for resolution on summary judgment.'" Id. (quoting Direct Techs., LLC v. Elec. Arts, Inc., 836 F.3d 1059, 1067 (9th Cir. 2016)).

"[S]ummary judgment is generally disfavored in the trademark arena". Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d 1025, 1029 (9th Cir. 2010) (quoting Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1140 (9th Cir. 2002)). The "likelihood of confusion is a factual determination, and district courts should grant summary judgment motions regarding the likelihood of confusion sparingly." Id. at 1039 (internal citation, alterations, and quotation marks omitted).

## C. Trademark Infringement and Unfair Competition Claims (Counts I-V, XIII-IX)

"'Likelihood of confusion' is the basic test for both common law trademark infringement and federal statutory trademark infringement." Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1403 (9th Cir. 1997). "The elements necessary to establish trademark infringement and unfair competition claims are identical." eAcceleration Corp. v. Trend Micro, Inc, 408 F. Supp. 2d 1110, 1114 (W.D. Wash. 2006) (citing Brookfield Comm., Inc. v. West Coast Enter. Corp., 174 F.3d 1036, 1046 n. 6, 1047 n. 8 (9th Cir. 1999)). Assessing the likelihood of confusion involves a "determination of whether 'the similarity of the marks is likely to confuse customers about the source of the products.'" GoTo.com, Inc. v. Walt Disney

Co., 202 F.3d 1199, 1205 (9th Cir. 2000) (quoting Official Airline Guides v. Goss, 6 F.3d 1385, 1391 (9th Cir. 1993)). "A likelihood of confusion exists when a consumer viewing a service mark is likely to purchase the services under a mistaken belief that the services are, or [are] associated with, the services of another provider." Murray v. Cable Nat. Broad. Co., 86 F.3d 858, 861 (9th Cir. 1996), as amended (Aug. 6, 1996) (citing Rodeo Collection, Ltd. v. West Seventh, 812 F.2d 1215, 1217 (9th Cir. 1987)). "The confusion must 'be probable, not simply a possibility.'" Id. (quoting Rodeo Collection, 812 F.2d at 1217).

"The first to use a mark is deemed the 'senior' user and has the right to enjoin 'junior' users from using confusingly similar marks in the same industry and market or within the senior user's natural zone of expansion." Brookfield Commc'ns, 174 F.3d at 1047. "Forward confusion occurs when consumers believe that goods bearing the junior mark came from, or were sponsored by, the senior mark holder." Surfvivor Media, Inc. v. Survivor Prods., 406 F.3d 625, 630 (9th Cir. 2005) (citing Dreamwerks Prod. Grp., Inc. v. SKG Studio, 142 F.3d 1127, 1129–30 & n.5 (9th Cir. 1998)). "[T]o survive summary judgment on its forward confusion claim in this case, [New Flyer] must raise a material question of fact [as to] whether the general public and the … industry members thought that [New Flyer] was the source of [San Juan Airlines'] [goods and services]. M2 Software, Inc., a Delaware corporation v. Madacy Entm't, a corporation, 421 F.3d 1073, 1079–80 (9th Cir. 2005).

### i. Related Goods and Services

"When the goods produced by the alleged infringer compete for sales with those of the trademark owner, infringement usually will be found if the marks are sufficiently similar that confusion can be expected." AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348 (9th Cir. 1979), abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792 (9th Cir. 2003); accord Nordstrom, Inc. v. 7525419 Canada Inc., No. C12-1387 TSZ, 2012 WL 12507605, at *5 (W.D. Wash. Dec. 27, 2012). "When the goods are related, but not competitive, several other factors are added to the calculus." Id. "Related products or services are those that, 'though not identical, are related in the minds of the consumers' and 'would be reasonably

thought by the buying public to come from the same source if sold under the same mark.'" Fierce, Inc. v. Franklin Covey Co., No. C18-1449-MJP, 2019 WL 1453573, at *5 (W.D. Wash. Apr. 2, 2019) (quoting Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1363 (9th Cir. 1985)). "If the goods are totally unrelated, there can be no infringement because confusion is unlikely." Sleekcraft, 599 F.2d at 348.[5] New Flyer argues that its goods and services are related to those of San Juan Airlines, as they are "both modes of transportation offered in the same geographic region", even if New Flyer does not compete with the airline. Dkt. #55 at 15. San Juan Airlines argues that they are unrelated.

Geographically speaking, New Flyer does not do any business in the San Juan Islands and does not supply buses to Whatcom. Norris Dep. at 49:1–3; Moen Dep. at 16:7–9; Goldman Decl. at ¶ 15. San Juan Airlines is based in Whatcom County, and approximately 90% of its reservations are made by individuals or companies with addresses 30 miles from Bellingham Airport. Douglass Decl. at ¶ 6. See Growler Station, Inc. v. Foundry Growler Station, LLC, No. SACV180433DOCDFMX, 2018 WL 6164301, at *6 (C.D. Cal. July 19, 2018) ("the likelihood of customer confusion is diminished since neither Plaintiff nor Defendant sell or try to sell anything within the same territory that the other does business.") (citing Fairway Foods v.

---

[5] New Flyer argues that the relatedness of the goods and services is not a threshold inquiry that must be satisfied before reaching the remainder of the analysis. Dkt. #55 at 15. Rather, it is just one factor among many for the district court to consider. Id. In Halicki Films, LLC v. Sanderson Sales & Mktg., while reversing the district court and holding that the plaintiff had standing to bring an infringement claim, the Ninth Circuit noted that the defendants' use of the marks on products that did not directly compete with plaintiff's products was not dispositive. 547 F.3d 1213, 1227 (9th Cir. 2008). Rather, "[t]he 'proximity or relatedness of the goods' is but one of eight factors for a district court to consider in its 'likelihood of confusion' analysis." Id. at 1228. The Ninth Circuit "caution[ed] the District Court to take a sufficiently broad approach if and when it reache[d] the merits of [the] infringement claims." Id. This does not take away from the holding in Sleekcraft that "[i]f the goods are totally unrelated, there can be no infringement". 599 F.2d at 348. See eAcceleration Corp., 408 F. Supp. 2d at 1117 ("However, even where the marks are identical, 'there may be no consumer confusion—and thus no trademark infringement—if the alleged infringer is in a different geographic area or in a wholly different industry.') (quoting Brookfield Commc'ns, 174 F.3d at 1054); Murray, 86 F.3d at 861 ("If goods or services are totally unrelated, there is no infringement because confusion is unlikely.") (citing Sleekcraft, 599 F.2d at 348).

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 8

Fairway Markets, 227 F.2d 193, 196 (9th Cir. 1955)). However, New Flyer and San Juan Airlines both operate in the Puget Sound region in Washington. Norris Decl. at ¶¶ 8–9; Douglass Decl. at ¶ 2. See Brookfield Commc'ns, 174 F.3d at 1054 (noting that there may be no consumer confusion if the infringer is in a different geographic area from the complainant, such as New Jersey and North Carolina, and Maryland and elsewhere in the country) (citations omitted).

In terms of the industry, San Juan Airlines sells tickets on its flights from Bellingham to the San Juan Islands. Douglass Decl. at ¶ 3. New Flyer supplies buses to transit agencies. Norris Decl. at ¶ 3. It does not own any buses, sell any bus tickets, or operate any bus lines itself. Norris Dep. at 48:22–25, 51:1–52:13. San Juan Airlines' tickets are sold directly to traveling customers over the telephone. Douglass Decl. at ¶ 10. New Flyer's sales begin with a Request for Information ("RFI") or a Request for Proposal ("RFP") from a transit agency. Norris Dep. at 184:19–185:4. New Flyer then puts together a bid for the agency and submits it. Id. The entire process is highly regulated and could take months or even a year. Id. at 186:6–187:4.

Both goods and services are within a (broadly conceived) transportation industry. They are not as far afield of each other as electronic tracking devices and antibiotics, Trovan Ltd. v. Pfizer Inc., 107 F. App'x 788, 789 (9th Cir. 2004) (mem), or garbage bags and literary works, Toho Co. v. Sears, Roebuck & Co., 645 F.2d 788, 790 (9th Cir. 1981). However, they do not appear to be related for the purposes of this analysis. Contrast Murray, 86 F.3d at 861 (holding that the parties' services were unrelated where the plaintiff conducted consumer surveys and sold his services to clients for use in television commercial advertising and the defendant had a talk-show program that allowed viewers to respond to questions by calling telephone numbers, but did not sell polling or marketing services or have any overlap of customers), with Nordstrom, 2012 WL 12507605 at *1–5 (holding that the goods and services of the parties were related where the plaintiff was a leading retailer of apparel and accessories and the defendant sold designer goods at discounted prices to its members through a 'flash sale' website, did not plan to expand into brick and mortar stores, and offered brands that overlapped with those available at the plaintiff's physical stores). Regardless, however, the Court will proceed to an

analysis of the "several other factors", known as the <u>Sleekcraft</u> factors, that apply where goods and services are related. <u>Sleekcraft</u>, 599 F.2d at 348.

### ii. Application of <u>Sleekcraft</u> Factors

"The <u>Sleekcraft</u> factors are intended as an adaptable proxy for consumer confusion, not a rote checklist." <u>Network Automation, Inc. v. Advanced Sys. Concepts, Inc.</u>, 638 F.3d 1137, 1145 (9th Cir. 2011) (citing <u>Fortune Dynamic</u>, 618 F.3d at 1030. "'Likelihood of confusion is a factual determination,' and 'district courts should grant summary judgment motions regarding the likelihood of confusion sparingly.'" <u>Fortune Dynamic</u>, 618 F.3d at 1039 (quoting <u>Thane Int'l, Inc. v. Trek Bicycle Corp.</u>, 305 F.3d 894, 901 (9th Cir. 2002), <u>superseded by</u> <u>statute</u> <u>on other</u> <u>grounds</u>, 15 U.S.C. § 1125) (alterations omitted). "Granting summary judgment in cases in which a majority of the <u>Sleekcraft</u> factors could tip in either direction is inconsistent with that principle." <u>Id.</u> There are eight factors: strength of the plaintiff's mark, proximity or relatedness of the goods and services, the defendant's intent in selecting the mark, evidence of actual confusion, marketing channels used, the likelihood of expansion into other markets, and the degree of care likely to be exercised by purchasers.

### 1. Strength of the Mark

"The more likely a mark is to be remembered and associated in the public mind with the mark's owner, the greater protection the mark is accorded by trademark laws." <u>GoTo.com</u>, 202 F.3d at 1207 (citing <u>Kenner Parker Toys Inc. v. Rose Art Indus., Inc.</u>, 963 F.2d 350, 353 (Fed. Cir. 1992)). The strength "of the trademark is evaluated in terms of its conceptual strength and commercial strength." <u>Id.</u>

"[M]arks are placed in one of five categories, ranging from weakest to strongest: generic, descriptive, suggestive, arbitrary, and fanciful". <u>Fortune Dynamic</u>, 618 F.3d at 1033 (citing <u>GoTo.com</u>, 202 F.3d at 1207). A strong mark is inherently distinctive, for example, an arbitrary or fanciful mark; it will be afforded the widest ambit of protection from infringing uses." <u>Sleekcraft</u>, 599 F.2d at 349 (citation omitted). "A descriptive mark tells something about the

product; it will be protected only when secondary meaning is shown." Id. (citation omitted). "In between lie suggestive marks which subtly connote something about the products. Although less distinctive than an arbitrary or fanciful mark and therefore a comparatively weak mark, a suggestive mark will be protected without proof of secondary meaning." Id. (citation omitted).

"Courts assess a mark's commercial strength by considering its actual marketplace recognition, and, on one hand, may consider evidence of substantial advertising expenditures, substantial sales, and widely distributed advertising campaigns 'sufficient to make the relative commercial strength of the … mark a question for the jury.'" Clean Crawl, Inc. v. Crawl Space Cleaning Pros, Inc., 364 F. Supp. 3d 1194, 1207 (W.D. Wash. 2019) (quoting Fortune Dynamic, 618 F.3d at 1034). Commercial strength can also be "shown through length and manner of use of the mark, the amount and volume of advertising, and the volume of sales." Playmakers, LLC v. ESPN, Inc., 297 F. Supp. 2d 1277, 1281 (W.D. Wash. 2003), aff'd, 376 F.3d 894 (9th Cir. 2004) (citation omitted).

According to New Flyer, its logo initially symbolized "a set of wings." Norris Dep. at 63:8–16. It suggests "efficiency in transportation", or "getting somebody to where they need to go safely, reliably." Id. at 64:4–12. New Flyer's logo is not arbitrary or fanciful. Fortune Dynamic, 618 F.3d at 1033. Nor is it descriptive, as it does not describe the buses that it manufactures. It "requires a mental leap from the mark to the product." Brookfield Commc'ns, 174 F.3d at 1058 (citing Self–Realization Fellowship Church v. Ananda Church of Self–Realization, 59 F.3d 902, 910–11 (9th Cir. 1995)). It is a suggestive mark, meaning that it is "presumptively weak." Id.

Such a mark may be strengthened by extensive advertising, the length of its exclusive use, or public recognition. Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1144 (9th Cir. 2002) (citing Am. Int'l Grp., Inc. v. Am. Int'l Bank, 926 F.2d 829, 832 (9th Cir. 1991)). New Flyer has used various forms of "wing" trademarks since approximately 1945. Ex. 1, Dkt. #57-1 at 8. In or about August 2002, New Flyer adopted an "orange and black sun-like circle/ring with an in-flight bird as its logo." Id. It adopted the logo that is the subject of this lawsuit in 2004. Id.

The logo appears on substantially all of New Flyer's advertisements and is displayed in literature at trade shows. Norris Decl. at ¶¶ 5–6. New Flyer has also provided information regarding the resources it has invested in protecting and promoting its trademark rights. Dkt. #58 at 4; see Ex. 1, Dkt. #57-1 at 4; see Clean Crawl, 364 F. Supp. 3d at 120 (finding that this factor weighed in favor of the plaintiff where it showed that it had invested more than $4.5 million in advertising its services under its brands, generated more than $90 million in revenue, and received multiple business awards and favorable customer reviews); Playmakers, 297 F. Supp. 2d at 1281 ("[I]t appears to the Court that ESPN's use of the mark is extraordinarily vast … ESPN has attested to the vast resources that have been spent advertising its dramatic series over the course of several months. … There is therefore a likelihood that ESPN's mark will overwhelm that of the LLC within (at least a portion of) the relevant market…"). The logos are generally readily visible to members of the public. Ex. 3A, Dkt. #67-3 (DeMers Report).

However, "the Ninth Circuit has 'rejected the contention that extensive advertising automatically transforms a suggestive mark into a strong one.'" Clean Crawl, 364 F. Supp. 3d at 1207 (quoting Nutri/System, Inc. v. Con-Stan Industries, Inc., 809 F.2d 601, 605 (9th Cir. 1987)). "Although [New Flyer]'s mark is protectible and may have been strengthened by advertising, … it is a weak mark entitled to a restricted range of protection. Thus, only if the marks are quite similar, and the goods closely related, will infringement be found." Sleekcraft, 599 F.2d at 350 (internal citation omitted). As previously discussed, New Flyer and San Juan Airlines' goods and services are not closely related. Murray, 86 F.3d at 861. Overall, then, this factor weighs only slightly in favor of New Flyer, if at all.

## 2. Proximity of the Goods

"We examine the relatedness of the parties' goods because the more closely related the goods are, the more likely consumers will be confused by similar marks." Entrepreneur Media, 279 F.3d at 1147. "The proximity of goods is measured by whether the products are: (1) complementary; (2) sold to the same class of purchasers; and (3) similar in use and function." Network Automation, 638 F.3d at 1150. New Flyer's buses, as previously discussed, are not

complementary to, similar in use and function to, or sold to the same class of purchasers as San Juan Airlines' flight tickets. Both could be said to offer "products and services relating to the [transportation] industry generally, and their principal lines of business … are not as different as guns and toys, … or computer circuit boards and the Rocky Horror Picture Show …" <u>Brookfield Commc'ns</u>, 174 F.3d 1036 at 1056 (internal citations omitted). However, the goods and services are not used for similar purposes, and the parties do not "compete for the patronage of an overlapping audience." <u>Id.</u>; <u>see</u> <u>M2 Software</u>, 421 F.3d at 1082. ("At a minimum, both [parties] distributed music and CDs. Therefore[,] this <u>Sleekcraft</u> factor weighs in M2 Software's favor, but only slightly because the genres of the music CDs are very significantly different.") The factor weighs in favor of San Juan Airlines.

### 3.    Similarity of the Marks

The similarity of the marks "has always been considered a critical question in the likelihood-of-confusion analysis. … Together with the relatedness of the services and the use of a common marketing channel, this first factor constitutes part of the controlling troika in the <u>Sleekcraft</u> analysis." <u>GoTo.com</u>, 202 F.3d at 1205 (internal citation omitted). "[T]he greater the similarity between the two marks at issue, the greater the likelihood of confusion." <u>Id.</u> at 1206. The marks "must be considered in their entirety and as they appear in the marketplace". <u>Id.</u> (citing <u>Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.</u>, 198 F.3d 1143, 1147–50 (9th Cir. 1999)). Similarity "is adjudged in terms of appearance, sound, and meaning". <u>Id.</u> (citing <u>Dreamwerks</u>, 142 F.3d at 1131. Similarities are weighed more heavily than differences". <u>Id.</u> (citing <u>Official Airline Guides, Inc. v. Goss</u>, 6 F.3d 1385, 1392 (9th Cir. 1993)).

The logos themselves are "glaringly similar." <u>Id.</u> However, even identical marks may not be confusingly similar depending on "the way the marks are encountered in the marketplace and the circumstances surrounding the purchase" of the goods and services. <u>Lindy Pen Co. v. Bic Pen Corp.</u>, 725 F.2d 1240, 1245 (9th Cir. 1984). When a challenged mark is accompanied by the logo of the manufacturer, confusion is unlikely. <u>Surfvivor Media, Inc. v. Survivor Prods.</u>, 406 F.3d 625, 633 (9th Cir. 2005) (citing <u>Pignons S.A. de Mecanique de Precision v. Polaroid Corp.</u>,

657 F.2d 482, 487 (1st Cir. 1981)). The consistent use of a housemark "can reduce the likelihood of confusion when the housemark is the more conspicuous mark and serves to indicate the source of origin to the public: [but] the presence of a housemark in conjunction with the trademark alone will not negate the likelihood of confusion." Charles Schwab & Co. v. Hibernia Bank, 665 F. Supp. 800, 808 (N.D. Cal. 1987) (citing Sleekcraft, 599 F.2d at 351).

San Juan Airlines represents that it always uses its housemark with its logo. Douglass Decl. at ¶ 13. New Flyer offered evidence of the logo appearing without the housemark SAN JUAN immediately below it. Dkt. #55 at 11–12; see Dkt. #57 (Artz Decl.) at ¶ 9. Viewing the facts in the non-moving party's favor, Zetwick, 850 F.3d at 441, there are some instances where the logo appears without the SAN JUAN housemark immediately below it, even if the housemark appears elsewhere on the airplane or web page in question. See Dkt. #63 (Douglass Supp. Decl.) at ¶¶ 2–4. In general, New Flyer prefers to "have the wings logo and the name together so that [it] can constantly build [its] brand." Norris Dep. at 88:20–24. It "sparingly" uses its logo without the housemark NEW FLYER. Id. at 85:2–7. Permission must be obtained from the marketing department before the logo can be used on its own. Id. at 82:7–14. "In recent years, buses in operation with certain transit agencies have used a wings-only application of New Flyer's trademark—i.e., without any lettering—including King County Metro (King County), Translink (Vancouver), and Community Transit (Everett)." Norris Decl. at ¶ 10.[6]

---

[6] San Juan Airlines argues that this testimony should be stricken and ignored pursuant to the sham affidavit doctrine. Dkt. #62 at 10. "[A] party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." Yeager v. Bowlin, 693 F.3d 1076, 1080 (9th Cir. 2012) (quoting Van Asdale v. Int'l Game Tech., 577 F.3d 989, 998 (9th Cir. 2009)). "This sham affidavit rule prevents 'a party who has been examined at length on deposition' from 'raising an issue of fact simply by submitting an affidavit contradicting his own prior testimony,' which 'would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.'" Id. (quoting Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir.1991)). However, Ms. Norris's declaration does not contradict her deposition testimony. When asked whether there were any circumstances in which New Flyer would approve the use of its logo without the NEW FLYER housemark, where the audience was the general community, Ms. Norris only mentioned Twitter. Norris Dep. at 89:1–21; see Dkt. #62 at 10 n.37. Earlier, however, Ms. Norris also stated that "some" of New Flyer's buses used the logo without the housemark. Norris Dep. at 79:15–80:3. She stated that she was unaware of a bus in Seattle that used the logo without the housemark because she "[hadn't] been there." Id. at 80:4–10. This

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 14

The fact that San Juan Airlines and New Flyer generally use their housemarks along with their logo reduces the likelihood of confusion. Lindy Pen Co., 725 F.2d at 1245. ("The trial court further found that the trademarks "BIC" and "LINDY" were prominently and repeatedly displayed on the pens and all packaging and promotional materials. The trial court therefore concluded that the two marks, Lindy's "Auditor's" and Bic's "Auditor's fine point," consider[ing] in the context in which they appeared in the marketplace, were not confusingly similar."). However, this is not true of every use of the logos, Zetwick, 850 F.3d at 441, and the logos themselves are very similar to each other. This factor weighs in favor of New Flyer.

### 4. Evidence of Actual Confusion

"Evidence that use of the two marks has already led to confusion is persuasive proof that future confusion is likely. … Proving actual confusion is difficult, however, … and the courts have often discounted such evidence because it was unclear or insubstantial." Sleekcraft, 599 F.2d at 352 (internal citations omitted). "The failure to prove instances of actual confusion is not dispositive against a trademark plaintiff, because actual confusion is hard to prove; difficulties in gathering evidence of actual confusion make its absence generally unnoteworthy." Brookfield Commc'ns, 174 F.3d at 1050. "[T]his factor is weighed heavily only when there is evidence of past confusion or, perhaps, when the particular circumstances indicate such evidence should have been available." Sleekcraft, 599 F.2d at 353.

New Flyer concedes that it has not uncovered any instances of actual confusion. Dkt. #55 at 22; see Norris Dep. at 161:24–162:2, 163:8–164:5; see Ex. 1, Dkt. #46-1 at 173. However, given that both New Flyer and San Juan Airlines operate in the same state and, per New Flyer's contention, in the same 'transportation industry,' some evidence of actual confusion should be

is not a direct contradiction. See DiNardo v. Wow 1 Day Painting, LLC, No. C16-1600JLR, 2018 WL 513584, at *7 (W.D. Wash. Jan. 23, 2018) ("[T]he Ninth Circuit cautions that this rule should be applied with caution. … The inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous… The non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition…") (internal citations and quotation marks omitted). The Court DENIES the request to strike the testimony.

available. See La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V., 762 F.3d 867, 876 (9th Cir. 2014) (holding that the lack of actual confusion did not weigh against the plaintiff where the parties "had never both operated in the U.S. market."). This factor therefore strongly weighs in favor of San Juan Airlines.

### 5. Marketing Channels

"Convergent marketing channels increase the likelihood of confusion." Sleekcraft, 599 F.2d at 353. "In assessing marketing channel convergence, courts consider whether the parties' customer bases overlap and how the parties advertise and market their products." Pom Wonderful LLC v. Hubbard, 775 F.3d 1118, 1130 (9th Cir. 2014) (citation omitted).

San Juan Airlines advertises in small publications local to the Bellingham area that cater to tourists. Douglass Decl. at ¶ 13. New Flyer makes use of its website, social media, press releases, demo buses and other channels. Norris Dep. at 197:15–199:10. It does not attend the fly-ins attended by San Juan Airlines, and San Juan Airlines does not attend the bus manufacturers' trade shows attended by New Flyer. Douglass Decl. at ¶ 14; see Ex. 3, Dkt. #44 at 22–25. "The parties do not attend the same trade shows, and their products are not sold by the same retailers or displayed in adjacent areas." Accuride, 871 F.2d at 1537. They do not employ the same sales methods and their price ranges are very different. Sleekcraft, 599 F.2d at 353. Their use of the internet does not create a likelihood of confusion, as their goods and services are unrelated and there are no similarities in their domain names. Dkt. #42 at 25. Their customer bases, as previously discussed, do not overlap at all. New Flyer's argument that its stakeholders include the general public because public opinion influences transit agencies' decisions of which buses to purchase is not compelling and is unsupported by any evidence. Dkt. #55 at 23. This factor weighs in favor of San Juan Airlines.

### 6. Type of Goods and Degree of Care

"In assessing the likelihood of confusion to the public, the standard used by the courts is the typical buyer exercising ordinary caution." Sleekcraft, 599 F.2d at 353 (citation omitted).

Although the "wholly indifferent may be excluded", the standard "includes the ignorant and the credulous." <u>Id.</u> (citations omitted). "When the buyer has expertise in the field, a higher standard is proper though it will not preclude a finding that confusion is likely. … Similarly, when the goods are expensive, the buyer can be expected to exercise greater care in his purchases; again, though, confusion may still be likely." <u>Id.</u> (citations omitted).

San Juan Airlines argues that purchasers of New Flyer's buses "would be expected to exercise a high degree of care in making their purchase decisions. This factor weighs heavily against finding a likelihood of confusion in the relevant purchasing population." <u>Accuride</u>, 871 F.2d at 1537. It points out that purchases are made pursuant to RFIs or RFPs that are submitted to New Flyer by the transit agencies themselves. Norris Dep. at 184:19–185:4. The entire process is highly regulated and could take months or even a year. <u>Id.</u> at 186:6–187:4. The Court agrees. San Juan Airlines also argues that the heightened standard applies to its own customers, because the tickets are relatively expensive, approximately 15% of its customers are regular flyers, and there are safety considerations involved in purchasing a flight ticket. Dkt. #42 at 26. Again, the Court agrees. <u>eAcceleration Corp</u>, 408 F. Supp. 2d at 1119 ("the price range [of $40 to $60] is not so low that the products would be bought on impulse. Thus, this factor is likely to either favor [the defendant] slightly or be neutral."); <u>Nordstrom</u>, 2012 WL 12507605 at *10 ("Although the goods at issue might be considered inexpensive, a consumer desiring to purchase items from [the defendant] must become a member and provide personal information, including an e-mail address. Because a relationship is formed between BTR and its members as a prerequisite to any transaction, the Court cannot focus solely on the price of the items being offered and sold."). This factor weighs in favor of San Juan Airlines.

### 7. San Juan Airlines' Intent

"When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." <u>Sleekcraft</u>, 599 F.2d at 354 (citation omitted). "Good faith is less probative of the likelihood of confusion, yet may be given considerable weight in fashioning a remedy." <u>Id.</u> New

Flyer argues that San Juan Airlines "at a minimum had constructive knowledge of New Flyer's registered wings logo, and virtually identical marks coupled with other record evidence supports at least subconscious copying." Dkt. #55 at 25. It further argues that the "logical inference is that the adopted mark was based off New Flyer's mark" in an attempt to "make its flights as accessible, easy, convenient, safe, and reliance as riding a bus". Id.

The Court is not persuaded. DeVeer explained that his inspiration for the logo came from the pilot wings given to children when flying. DeVeer Dep. at 94:2–22. He believed that the San Juan Airlines' logo was strong because it was clearly recognizable as a plane. Id. at 184:23–185:17. Although he cannot recall the specifics, he testified that it is likely that he did Google searches for airlines, airplanes, things related to air transport, and flying. Id. at 87:17–88:25, 93:13–25. He also specifically searched for wings logos and marks. Id. at 99:14–100:18. He does not think it likely that he searched for information in the automotive industry, although his colleague did present him with "some information on a car" during their research phase. Id. at 90:1–91:9, 91:16–93:10. He did not conduct any searches of trademarks to determine if there were similar logos already in existence. Id. at 166:23–167:2. Regardless, he clearly testified that he was unaware of New Flyer's logo until San Juan Airlines received New Flyer's cease and desist letter. Id. 173:2–174:2, 45:12–18. He rides buses in Bellingham but has never noticed the New Flyer logo on them. Id. at 143:4–144:11. He admitted that, had he been aware of the New Flyer logo at the time, he would not have thought it appropriate for San Juan Airlines to utilize his logo. Id. at 45:12–46:1.[7]

There is no evidence that DeVeer knowingly designed a logo similar to that of New Flyer for San Juan Airlines. Hokto Kinoko Co. v. Concord Farms, Inc., 738 F.3d 1085, 1096 (9th Cir. 2013). He was unaware of New Flyer's logo at the time of the design. San Juan Airlines had no

---

[7] It's unfortunate that San Juan Airlines declined DeVeer's offer to redo the logo once he became aware of the striking similarity of the marks. It might have prevented this lawsuit and would have avoided future potential problems if there are material changes in how either of the parties' business evolves.

conscious knowledge of the existence of New Flyer's mark, no intent to infringe, and no indications of a conflict with New Flyer. M'Otto Enterprises, Inc. v. Redsand, Inc., 831 F. Supp. 1491, 1503 (W.D. Wash. 1993).

### 8. Possibility of Expansion

"A strong possibility that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." Sleekcraft, 599 F.2d at 354 (citation and internal quotation marks omitted). New Flyer has no plans to expand into manufacturing airplanes. Norris Dep. at 55:1–19. San Juan Airlines has no plans to expand to service municipal bus customers or otherwise compete with New Flyer. Douglass Decl. at ¶ 16.

### iii. No Likelihood of Confusion

"The Sleekcraft factors are intended as an adaptable proxy for consumer confusion, not a rote checklist." Network Automation, 638 F.3d at 1145 (citing Fortune Dynamic, 618 F.3d at 1030). "These tests were not meant to be requirements or hoops that a district court need jump through to make the determination." Eclipse Assocs. Ltd. v. Data Gen. Corp., 894 F.2d 1114, 1118 (9th Cir. 1990). "In other words, 'we do not count beans.'" Rearden LLC v. Rearden Commerce, Inc., 683 F.3d 1190, 1209–10 (9th Cir. 2012) (quoting Dreamwerks, 142 F.3d at 1129). "A determination may rest on only those factors that are most pertinent to the particular case before the court, and other variables besides the enumerated factors should also be taken into account based on the particular circumstances." Id. (citing Network Automation, 638 F.3d at 1142). "This eight-factor analysis is 'pliant,' illustrative rather than exhaustive, and best understood as simply providing helpful guideposts." Fortune Dynamic, 618 F.3d at 1030 (quoting Brookfield Commc'ns, 174 F.3d at 1054).

The use of admittedly similar logos by San Juan Airlines and New Flyer is nevertheless unlikely to result in any consumer confusion. San Juan Airlines sells flight tickets to the San Juan Islands and surrounding areas. New Flyer manufactures and sells buses to transit agencies in a highly regulated process initiated by the agencies themselves. Their goods and services are

unrelated beyond a semantic affiliation with the transportation industry. San Juan Airlines' customers are individual travelers, and New Flyer's customers are transit agencies. A member of the public does not *choose* to ride a New Flyer bus over another bus: he or she simply uses the public transportation system available in his or her region. By contrast, a tourist traveling from Bellingham Airport to the San Juan Islands chooses to purchase a ticket on San Juan Airlines over other airlines offering the same flight. There is no overlap in the customer base or marketing channels. There is no evidence of actual confusion, and there is no evidence that San Juan Airlines knowingly adopted a mark similar to New Flyer's. Viewing the facts in New Flyer's favor, San Juan Airlines is entitled to summary judgment as a matter of law on its trademark infringement and unfair competition claims. Fed. R. Civ. P. 56(a).

### D. Trademark Dilution Claims (Counts VI and VII)

"The Washington dilution statute is identical to the federal statute." <u>Nautilus Grp., Inc. v. Icon Health & Fitness, Inc.</u>, No. C02-2420RSM, 2006 WL 3761367, at *5 (W.D. Wash. Dec. 21, 2006) (citing RCW 19.77.160(1)). To prevail on a trademark dilution claim "a plaintiff must show that: (1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment." <u>Lochirco Fruit & Produce Co., Inc. v. Tarukino Holdings, Inc.</u>, No. C18-763-RAJ, 2019 WL 157939, at *3 (W.D. Wash. Jan. 9, 2019) (quoting <u>Jada Toys, Inc. v. Mattel, Inc.</u>, 518 F.3d 628, 634 (9th Cir. 2008)). "Dilution is a cause of action invented and reserved for a select class of marks—those marks with such powerful consumer associations that even non-competing uses can impinge their value." <u>Thane</u>, 305 F.3d at 907 (quoting <u>Avery Dennison Corp. v. Sumpton</u>, 189 F.3d 868, 875 (9th Cir. 1999)). Dilution protection is extended only to those whose marks are a "household name." <u>Nissan Motor Co. v. Nissan Computer Corp.</u>, 378 F.3d 1002, 1011 (9th Cir. 2004) (quoting <u>Thane</u>, 305 F.3d at 1011). In determining whether a mark "possesses the requisite degree of recognition, the court may consider all relevant factors, including… (i) The duration, extent, and geographic reach of advertising and publicity of the mark, … (ii) The

amount, volume, and geographic extent of sales of goods or services offered under the mark[,]

(iii) The extent of actual recognition of the mark[,] [and] (iv) Whether the mark was registered".

15 U.S.C. § 1125(c)(2)(A).

New Flyer's allegations concerning the number of buses that it has sold, its dominance of

the bus manufacturing industry, its advertising, and its social media presence, see Dkt. #55 at 22,

"do not reasonably support the inference that [its] marks enjoy the 'requisite recognition,' and

are 'widely recognized by the general consuming public of the United States'". (quoting 15

U.S.C. § 1125(c)(2)(A)). Kische USA LLC v. Simsek, No. C16-0168JLR, 2016 WL 7212534, at

*12 (W.D. Wash. Dec. 13, 2016). New Flyer has not shown that its mark is entitled to protection

from dilution. See Govino, LLC v. Goverre, Inc., No. 8:17-CV-01237-JLS-E, 2018 WL

7348849, at *5 (C.D. Cal. Nov. 20, 2018) ("Although evidence of marketing attempts to

increase a mark's profile can be considered in a factual determination of famousness, … courts

accord it far less weight than evidence of actual ubiquity in the national consciousness. …

Plaintiff has not submitted consumer surveys or similar direct evidence indicating widespread

fame … extensive media coverage cannot alone support a finding of famousness without

independent evidence that such a national media presence has in fact permeated the national

consciousness.").

### E. Unjust Enrichment Claim (Count X)

"Three elements must be established in order to sustain a claim based on unjust

enrichment: a benefit conferred upon the defendant by the plaintiff; an appreciation or

knowledge by the defendant of the benefit; and the acceptance or retention by the defendant of

the benefit under such circumstances as to make it inequitable for the defendant to retain the

benefit without the payment of its value." Young v. Young, 164 Wn. 2d 477, 484 (2008)

(quoting Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc., 61 Wn. App. 151, 159–60, amended

sub nom. Bailie Commc'ns, Ltd v. Trend Bus. Sys., Inc., 814 P.2d 699 (Wn. Ct. App. 1991)).

New Flyer has introduced no evidence to show that San Juan Airlines has "capitalized on the public's familiarity with New Flyer and its carefully acquired goodwill", Dkt. #55 at 27, let alone that San Juan Airlines was aware of any purported benefit at the time. <u>Young</u>, 164 Wn. 2d at 484. Fifteen percent of San Juan Airlines' customers are regular flyers, accounting for 70% of the revenue. Douglass Decl. at ¶ 6. More than 50% of its revenue is generated from customers who have been flying with the airline since before it adopted the logo in question. <u>Id.</u> There is no evidence of a benefit being conferred by New Flyer on San Juan Airlines. San Juan Airlines is entitled to summary judgment on the unjust enrichment claim.

## **CONCLUSION**

For all the foregoing reasons, San Juan Airlines' motion for summary judgment is GRANTED.

DATED this 3rd day of September, 2019.


*Mkt S Lasnik*
Robert S. Lasnik
United States District Judge